

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT
APR 03 2008
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MARCUS LEE | CIVIL ACTION NO. 05-1907 |
| VERSUS | JUDGE DONALD E. WALTER |
| THE KANSAS CITY SOUTHERN RAILWAY COMPANY | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion to Exclude Alleged Comparators [Doc. #103] and a Motion for Reconsideration or, in the Alternative, to Alter or Amend Order [Doc. #98], both filed on behalf of defendant, the Kansas City Southern Railway Company. Plaintiff opposed the Motion for Reconsideration. No timely opposition was filed to the Motion to Exclude Comparators. For the reasons assigned herein, defendant's Motion to Exclude is **GRANTED**.

Further, pursuant to Federal Rule of Civil Procedure 54, a district court may revisit prior decisions of its own "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. Proc. 54(b).[1] This Court finds that revisiting its Order denying defendant's Motion for Summary Judgment is proper. Accordingly, defendant's Motion to Reconsider [Doc. #98] is **GRANTED**. For the following reasons, defendant's Motion for Summary Judgment [Doc. #43] is **GRANTED**, and plaintiff's claims are **DISMISSED**.

---

[1] See Tel-Phonic Services, Inc. v. TBS Intern., Inc., 975 F.2d 1134, 1138 (5th Cir. 1992) ("A district court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance"), quoting Christian v. Colt Indus. Operating Corp., 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).

## STATEMENT OF THE CASE

Plaintiff, Marcus Lee ("Lee"), brings this action against his former employer, the Kansas City Southern Railway Company ("KCS"), alleging that KCS is liable to plaintiff under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 for race discrimination and retaliation, and under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. (the "FMLA") for retaliation.

Lee, an African-American, was hired by KCS in April 1993, as a student brakeman in Shreveport, Louisiana, and became a conductor for KCS on October 5, 1993. In the mid-1990s, Lee was promoted to the position of locomotive engineer for KCS. He remained an engineer until KCS terminated Lee's employment on September 18, 2004.[2] See Pretrial Order Stipulations.

KCS asserts that Lee's employment was terminated after Lee committed two "major" violations within a six-month period, the last of which was serious enough to warrant a reprimand, suspension and eventually termination. Lee alleges that similarly situated Caucasian employees were treated more favorably for the same or similar conduct, and that his employment was terminated in retaliation for his prior charges of discrimination and/or for his use of leave under the FMLA. Lee filed this Title VII and FMLA suit against KCS on November 11, 2005.

On November 21, 2007, KCS filed a Motion for Summary Judgment wherein it asserted, inter alia, that (1) plaintiff could not prove similarly situated employees were treated more

---

[2]The Court notes that all evidence before it indicates that Lee's employment was terminated on September 24, 2004. However, the parties stipulated in the Pretrial Order that Lee's termination date was September 18, 2004. The Court relies on the stipulated date, despite evidence to the contrary, as the Pretrial Order controls, see Fed. R. Civ. P. 16(d), and the less than one week difference in date is irrelevant for the Court's analysis.

2

favorably, and (2) plaintiff failed to show a causal connection between his termination, and the discrimination charges filed with the EEOC or the FMLA leave taken. Plaintiff filed his response to KCS's motion on December 14, 2007. KCS's motion was denied on December 17, 2007, and a pretrial conference was held in this matter on December 27, 2007.

At the pretrial conference, the parties advised the Court that the only discovery issues remaining with regard to Lee's pending Motion to Compel Discovery, filed on October 24, 2007, were related to KCS's alleged failure to produce requested comparator files and electronically stored information ("ESI"). To resolve the ESI discovery issue, the Court required the parties to coordinate a telephone conference between their respective Information Technology ("IT") personnel within ten days of the pretrial conference, and set a follow-up conference for January 22, 2008, to deal solely with the issue of comparators. See Pretrial Conference Minutes [Doc. #99].

On January 2, 2008, and January 18, 2008, respectively, KCS filed its Motion for Reconsideration and Motion to Exclude Alleged Comparators, presently before this Court. Lee filed his opposition to KCS's Motion for Reconsideration on January 22, 2008. KCS replied to plaintiff's opposition on January 30, 2008.

The conference regarding comparators was held as scheduled on January 22, 2008. At that time, the parties were again instructed to coordinate a telephone conference between their respective IT personnel and to conclude all electronic discovery issues within thirty days of the conference. Plaintiff was allowed fifteen days from receipt of KCS's discovery responses to file oppositions to the pending Motions to Reconsider and to Exclude Alleged Comparators. See Scheduling Conference Minutes [Doc. #106].

On March 17, 2008, KCS was granted leave to file a status report and to supplement its

Motion to Exclude. In its status report, KCS advised the Court that on February 20, 2008, it produced via overnight mail to counsel for plaintiff all non-privileged e-mails and electronic attachments, including investigation transcripts, retrieved during an electronic search for such ESI relating to Lee and the individuals Lee identified as comparators. After unsuccessful attempts to coordinate a meeting of IT personnel, KCS presented to plaintiff's counsel the affidavit of Gary Moore ("Moore"), the IT professional employed by KCS, wherein Moore described how he conducted the electronic search. KCS Status Report [Doc. #119], Exh. C, Affidavit of Gary Moore ("Moore Aff.").

On March 10, 2008, Lee filed a Motion for Extension of Time to File Response/Reply to KCS's pending motions. In that motion, Lee asserted that he received KCS's discovery responses on February 25, 2008, but the responses were incomplete due to KCS's failure to: (1) search for any "last supper" documentation; (2) provide the electronic documents in their original format; and (3) search local hard drives. Lee also took issue with KCS's failure to produce Moore for the court-ordered conference of IT personnel, and KCS's request for leave to file a supplemental motion to exclude comparators. For those reasons, Lee requested fifteen additional days from "receipt of all relevant information and/or the holding of the IT conference and/or the Receipt of Defendant's Supplemental Motion . . . whichever shall come last." See Plaintiff's Motion for Extension [Doc. #111].

KCS opposed plaintiff's motion by asserting, in essence, that Lee received all he requested in discovery in a format not previously objected to; that the subject KCS employees were directed to search and produce any relevant e-mails saved on their local hard drives but none were so saved; and, in an effort to rectify its failed attempts to coordinate a conference, KCS supplied an affidavit wherein its IT employee explained how the ESI was sought and

4

obtained. See KCS's Opp. to Motion for Extension [Doc. #114]. KCS's supplement to its Motion to Exclude Alleged Comparators consisted of a correction that Lee's disciplinary decision maker had, in fact, imposed discipline on an alleged comparator. See Suppl. Motion to Exclude [Doc. #119]. This Court denied Lee's Motion for Extension of Time on March 17, 2008. On April 2, 2008, Lee filed a Memorandum in Opposition to Defendant's Motion to Exclude Alleged Comparators. Plaintiff's opposition is untimely and therefore, shall not be considered.

As all properly filed briefs are presently before this Court, KCS's pending motions are now ripe for determination.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56 (c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id. The court must "review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mutual Auto Insurance Co., 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-

moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

## LAW AND ANALYSIS

### A.  Title VII Race Discrimination Claim.

Title VII makes it unlawful for an employer to discharge an employee because of his race. See 42 U.S.C. § 2000e-2(a). Lee's discrimination claims are subject to the burden shifting framework enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under McDonnell Douglas, Lee has the initial burden of establishing a prima facie case by a preponderance of the evidence. See Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003). If Lee is successful, the burden then shifts to KCS to articulate a legitimate, nondiscriminatory reason for the challenged employment action. Id. If KCS meets its burden, the burden shifts back to Lee to produce evidence that KCS's articulated reason is merely a pretext for discrimination. Id.

To establish a prima facie case of race discrimination, a plaintiff must show he was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse

employment action; and (4) treated differently from others similarly situated. Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005). The first three elements are not in dispute. The Court's focus here is on the fourth. In a work-rule violation case such as this, a Title VII plaintiff may establish a prima facie case by showing "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995). Lee relies upon the latter.

In the case sub judice, KCS asserts that Lee's employment was terminated when after twelve previous violations, he committed two "major" moving violations, as that term is defined in the KCS 2004 Revised Disciplinary Policy,[3] in a six-month period. In opposing KCS's Motion for Summary Judgment, Lee asserts that KCS improperly examined both Lee's missed call and moving violations, and that other KCS engineers committed the same or similar offenses and had similar discipline histories but were not terminated, or were offered reinstatement through a leniency agreement. Lee offers Greggory Bickham ("Bickham") and James McClure ("McClure") as comparators, and provides their disciplinary histories, in addition to the disciplinary history of Lee, in support of Lee's opposition. KCS asserts in its Motion to Exclude that Lee also intends to proffer the following individuals as comparators: Billy Abernathy ("Abernathy"), Steve Sandlin ("Sandlin"), Marshall McKee ("McKee"), Samuel Parker ("Parker"), Russell Gustafson ("Gustafson"), Roy Pillard ("Pillard") and Brady Alsup ("Alsup").

---

[3]Examples of "Major Violations" in the KCS 2004 Revised Disciplinary Policy are: "[f]ailure to comply with rules or procedures that protect employees or machinery as provided by a train dispatcher, signal device, prescribed flag, track bulletin, or verbal or written instructions"; "[e]xcessive over speed (ten miles per hour or more over the posted speed limit at a particular location)"; "[u]nless otherwise noted, violations that can result in revocation of a locomotive engineer's certificate. . . ." See KCS Motion for Summary Judgment, Exh. 8, Affidavit of Mark Redd ("Redd Aff."), Exh. A.

To be admissible, evidence must be relevant. See Fed. R. Evid. 401. To determine whether the testimony and discipline records of the proposed comparators are relevant, the Court must examine whether Lee and his former fellow employees were similarly situated from the perspective of their employer when the relevant employment decisions were made. See Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206, 210 (5th Cir. 2004). In disparate treatment cases involving separate incidents of misconduct, employees are similarly situated only if the circumstances and misconduct of the comparator employees are "nearly identical" to that of the plaintiff. See id., at 213 (quoting Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991)). The Fifth Circuit has found employees' circumstances not to be "nearly identical" when the employees' actions were reviewed by different supervisors, see Little, 924 F.2d at 97, and the employees engaged in different violations of company policy, see Davin v. Delta Air Lines, Inc., 678 F.2d 567, 570 (5th Cir. 1982). See also Okoye v. Univ. of Tex. Health Science Center, 245 F.3d 507, 514 (5th Cir. 2001). "Comparably serious misconduct" by employees, by itself, is not sufficient to deem employees similarly situated. Perez, 395 F.3d at 213.

Lee was charged with violating 49 C.F.R. §240.117(e)(4) and General Code of Operating Rules ("GCOR") 9.5, 9.12 and 10.1, when he ran through a stop signal without proper authority on September 11, 2004, while serving as Engineer. KCS Statement of Uncontested Facts ("SUF"), ¶5.n.; Lee Response to KCS SUF, ¶5.n.; Lee Response to KCS Motion for Summary Judgment, Exh. 2 ("Lee Exh. 2"). A formal investigation of the alleged violation was conducted with Fred Williams ("Williams"), then-Superintendent of the Shreveport Terminal for KCS, acting as hearing officer. KCS Motion for Summary Judgment, Exh. 9, Affidavit of Fred Williams ("Williams Aff."), ¶¶2, 4-6.

According to Kathleen Alexander ("Alexander"), Director of Labor Relations over Train

and Engine crafts, the KCS 2004 Revised Disciplinary Policy required a review of an employee's disciplinary history for the three years immediately prior to the rule violation at issue to determine the appropriate level of discipline. Lee Response to KCS Motion for Summary Judgment ("Lee Opp."), Exh. 1, Deposition of Kathleen Alexander ("Alexander Depo."), pp. 105-7. However, to determine whether to offer a leniency agreement and reinstatement to an employee, Alexander would assess that employee's entire disciplinary record. Id. at p. 108.

Williams reviewed Lee's disciplinary history, and found that three years prior to the major violation at issue, Lee committed one major and one serious violation. Williams Aff., ¶¶9-12. Based on Williams' findings during the formal investigation, his review of Lee's disciplinary history "of major and serious safety violations" and his review of KCS's disciplinary policy, Williams recommended to his supervisor, Mark Redd ("Redd"), that Lee's employment be terminated. Id.

Redd was the General Superintendent of Transportation for KCS when Lee was terminated, and had the final decision making authority relating to the discipline of transportation employees, including Lee. Redd Aff., ¶3. Redd reviewed the transcript of Lee's formal investigation, conferred with Williams and reviewed Lee's disciplinary history for the three years prior to the September 2004-violation before making the decision to terminate Lee's employment. Id. at ¶¶6-7.

In the three years before the September 2004-violation, Lee's disciplinary history reflects the following violations, and resulting discipline:

    (1)    Lee accepted responsibility for failing to stop short of an improperly lined switch on April 11, 2002, resulting in running through that switch while serving as Engineer of Train 1082 in violation of GCOR 8.12 and 8.15. KCS SUF, ¶5.1.; Lee Response to KCS SUF, ¶5.1.; Lee Exh. 2; KCS Motion for Summary Judgment, Exh. 1, Deposition of Marcus Lee ("Lee Depo."), p. 88. Lee received

a 5-day suspension for the April 2002-violation. Lee Exh. 2.

(2) Lee was charged with violating 49 C.F.R. §240.117(e)(2) and GCOR 1.1.1 and 5.4.2 when he was alleged to have exceeded the maximum speed or failed to control the train in accordance with a yellow board[4] near Wilton, Arkansas on March 11, 2004, while Lee served as Engineer. KCS SUF, ¶5.m.; Lee Response to KCS SUF, ¶5.m.; Lee Exh. 2. Lee accepted responsibility for this violation, and received a 30-day suspension. His locomotive engineer's license was revoked for one month. Williams Aff., ¶9.

The issue of whether proffered comparators are similarly situated to the plaintiff is generally one for the jury. See Perez, 395 F.3d at 211-15. However, this Court cannot allow the plaintiff "to saturate the record with testimony pertaining to other employees" with distinctly different disciplinary histories who were disciplined by different supervisors under different disciplinary policies. See Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 298 (5th Cir. 2000).

As stated previously, Redd made the decision to terminate Lee. KCS asserts that the only alleged comparator employee upon whom Redd imposed discipline is Sandlin, a Caucasian employee. Lee has failed to show that Sandlin committed the same misconduct as Lee, or that Sandlin committed more than one major violation within a six-month period. Thus, Sandlin cannot be considered "similarly situated" to Lee.

According to KCS, the alleged comparators who committed the same violation that ultimately caused Lee to be terminated, i.e., running through a signal requiring a stop, are: Abernathy, Parker, Gustafson, Pillard, Alsup and Bickham. Of those employees who committed the same misconduct as Lee, only Alsup and Bickham were disciplined under the 2004 Revised Disciplinary Policy used to determine Lee's discipline. As noted above, neither Alsup nor

---

[4] A "yellow board" is a cautionary signal that requires train crews to slow to a speed that would allow them to stop the train on very short notice.

10

Bickham was disciplined by Redd. Further, there is no evidence before this Court that Alsup, Bickham[5], Abernathy, Parker, Gustafson or Pillard committed two major violations in a six-month period.

Lee has failed to show that the circumstances and misconduct of those he seeks to introduce as comparators are "nearly identical" to his. Therefore, the purported comparators cannot be considered similarly situated, and any evidence pertaining to them must be excluded as irrelevant. Without evidence of similarly situated employees, Lee cannot meet his burden of proving a prima facie case of discrimination.

**B.    Retaliation Claims.**

Both Lee's Title VII and FMLA retaliation claims are also subject to the McDonnell Douglas framework. Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996) ; Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999). However, as with his discrimination claim, Lee does not provide evidence sufficient to overcome the first hurdle of the burden shifting analysis.

To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Id.

---

[5]KCS asserts that Lee improperly included non-moving violations and a six-year disciplinary history for Bickham, while excluding all non-moving violations and violations committed beyond the three-year window for Lee. The Court notes that plaintiff's inclusions and omissions were consistent with KCS's 2004 Revised Disciplinary Policy requiring an initial review of only those violations committed three years prior to the violation at issue. There is no evidence that Lee committed any non-moving violations three years prior to September 2004. See Lee Exh. 2; see also KCS Motion for Reconsideration, Exh. A. Further, Bickham was terminated in 2003, 2004 and 2006, but was reinstated through a leniency agreement in 2003 and 2005. See Lee Opp., Exh. 3 ("Lee Exh. 3"). Thus, a review of Bickham's disciplinary history as far back as June 2000 was appropriate.

1. <u>Title VII Retaliation.</u>

Lee alleges he was terminated in retaliation for filing a race discrimination charge against KCS with the EEOC on November 11, 2003, after a co-worker drew a knife on him. Lee further asserts that he was not offered a leniency agreement or reinstatement as were other similarly situated Caucasian employees in retaliation for Lee filing a second race discrimination charge against KCS in December 2004 as a result of his September 2004 termination.

Redd states in his affidavit that when he decided to terminate Lee's employment, Redd was not aware that Lee had previously filed a discrimination charge with the EEOC. Redd Aff., ¶15. Williams states in his affidavit that he, too, had no knowledge of the EEOC charge filed by Lee when he recommended to Redd that Lee's employment be terminated. Williams Aff., ¶14.

In opposing KCS's Motion for Summary Judgment, Lee asserts, without evidentiary support, that Redd "recalls this event" which, grammatically, refers to the knife incident leading to Lee's filing of the EEOC charge, but the Court assumes plaintiff intended to refer to the actual filing of the charge by Lee. Lee Opp., p. 2. Lee further asserts that Redd "is generally made aware when employees under his jurisdiction make charges of discrimination." Lee Opp., Exh. 5 Deposition of Mark Redd ("Redd Depo."), p. 56. Lee has provided the Court no other evidence to establish a causal link between his filing a charge with the EEOC in November 2003, and his termination more than ten months later. See <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (surveying temporal proximity cases and noting courts have found a lapse of up to three or four months too large to support causation); <u>see also</u> <u>Russell v. Univ. of Texas</u>, 234 Fed.Appx. 195, 207 (5th Cir. 2007) (unpublished) (finding six-month gap between protected activity and alleged retaliatory actions not sufficient to infer causation).

Based on the scant evidence before it, this Court cannot infer a causal connection between Lee filing a discrimination charge in 2003 and his termination almost one year later. Accordingly, Lee's Title VII retaliation claim based on his 2003 EEOC charge must be dismissed.

To establish a causal connection between the 2004 EEOC charge and Lee not being offered a leniency agreement and reinstatement, Lee again relies upon Redd's "general" awareness of EEOC charge filings. Lee Opp., p. 9. Lee also relies upon the deposition testimony of Alexander that she had the authority to offer Lee a leniency agreement and reinstatement, and that the labor relations office would generally consult with an employee's general manager, in this case, Redd, before making such an offer. See Alexander Depo., pp. 85-6.

There is no evidence before this Court that any discussion took place between Alexander and Redd after Lee's employment was terminated. To the contrary, Redd testified in his deposition that he did not remember having any other involvement with Lee's discipline after Redd decided Lee should be terminated. Redd Depo., p. 59. Further, Redd did not recall ever speaking with Alexander about Lee. Id. It is undisputed that Alexander did not know Lee filed the 2004 EEOC charge when Lee appealed his termination to Alexander's office. KCS Reply to Motion to Reconsider, Exh. A, Affidavit of Kathy Alexander ("Alexander Aff."), ¶7.

Any connection between plaintiff filing an EEOC charge in December 2004 and KCS failing to offer Lee a leniency agreement and reinstatement is tenuous, at best. Therefore, plaintiff's Title VII retaliation claim based on his 2004 EEOC charge lacks merit and must also be dismissed.

13

2.  **FMLA Retaliation.**

Under the FMLA, a covered employer must provide up to 12 weeks of unpaid leave per 12-month period to any eligible employee who (1) suffers from "a serious health condition that makes the employee unable to perform the functions" of that employee's position; (2) becomes a parent and must care for his child or children; or (3) must care for a spouse, child or parent, if that spouse, child or parent has a serious health condition. See 29 U.S.C. § 2612(a)(1). Employers have both "a prescriptive obligation under the under the FMLA – they must grant employees substantive rights guaranteed by the FMLA – and . . . a proscriptive obligation – they may not penalize employees for exercising these rights." Chaffin, 179 F.3d at 319.

Plaintiff asserts that KCS retaliated against him for exercising his right under the FMLA to take leave. Therefore, Lee asserts that KCS violated its proscriptive duty.

It is undisputed that KCS provided Lee all FMLA leave he requested in 2000 and 2003, with no leave sought in 2001 and 2002. See Pretrial Order; Lee Opp., p. 10. There is no evidence before the Court that Lee requested any FMLA leave in 2004. See Alexander Depo., p. 31.

Lee asserts that he requested intermittent leave in 2003 which, under the FMLA, should be calculated in terms of hours rather than days. 29 C.F.R. §203. Lee further asserts that due to Alexander's miscalculation, Lee appeared to have used 57 days of FMLA leave in 2003. According to Lee, his taking that amount of leave caused him to be placed on a "Last Supper" list, an "availability" list generated by the Crew Calling department. Lee Opp., Exh. 6, Deposition of Joe McDonald ("McDonald Depo."), pp. 270-74; Alexander Aff., ¶4. Joe McDonald ("McDonald"), a KCS manager, testified in his deposition that the "Last Supper" list was given to the train masters of employees with high layoff records so those employees could

be interviewed in an attempt to improve their attendance record. McDonald Depo., pp. 273-74.

KCS has provided the Court evidence that when Lee was terminated, neither Redd nor Williams was aware Lee had requested and/or taken intermittent FMLA leave. Redd Aff., ¶16; Williams Aff., ¶15. The only evidence before this Court of any link between the availability or "Last Supper" list and Redd, Lee's disciplinary decision maker, is: (1) McDonald's testimony that generation of this list began under Redd, McDonald's supervisor, in 2002 or 2003, McDonald Depo., pp. 273-74; and (2) Redd's testimony that he recognized the format of a document he described as an employee attendance record that tracks employees' use of sick and family leave to ensure that employees are "working full time", Redd Depo., pp. 52-53.

This evidence does not create a genuine issue for trial sufficient to defeat summary judgment. Accordingly, plaintiff' FMLA retaliation claim must also be dismissed.

## CONCLUSION

For the reasons stated above, KCS's Motion to Exclude Alleged Comparators and Motion for Reconsideration are **GRANTED**. Lee has failed to meet his burden of proof on summary judgment. Thus, KCS's Motion for Summary Judgment is **GRANTED**, and Lee's claims are hereby **DISMISSED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 3d day of April, 2008.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE